## In re ADOPTION OF TSCHEINER.

[Cite as *In re Adoption of Tscheiner* (2000), 141 Ohio App.3d 527.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000485.

Decided Dec. 22, 2000.

*Donald L. Weber* and *H. Fred Hoefle,* for appellee.

*Frederick M. Erny,* for appellant.

GORMAN, Presiding Judge.

The objector-appellant, Joseph White, appeals from the order of the trial court resulting from a petition for adoption of a minor, Brandon Tscheiner, filed by Norbert Tscheiner. White is the biological father of Brandon; Norbert Tscheiner is the husband of Brandon's mother. The part of the order that is the basis of this appeal concerns the court's finding that White had failed, without justifiable cause, to communicate with Brandon for at least one year prior to the filing of the petition for adoption, and, therefore, pursuant to R.C. 3107.07(A), his consent was not necessary to the adoption.

The sole issue in this appeal centers on whether a conversation White had with his son within the one-year statutory period constituted a communication for purposes of the statute. The trial court characterized this contact as a "chance encounter" in which "[i]f Joe White and Brandon ever talked, there was no evidence that the most significant exchange of ideas ever occurred: that Joe White communicated to Brandon that he is his father or that any ideas or information was received or sent in the context of that relationship." White testified, however, that during this encounter the two hugged and played ball, and that he told Brandon that he was his "dad."

Interpreting R.C. 3107.07(A), the Ohio Supreme Court has determined that the legislature "purposely avoided the confusion which would necessarily arise from the subjective analysis and application of terms such as failure to communicate meaningfully, substantially, significantly, or regularly." *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 366–367, 18 OBR 419, 423–424, 481 N.E.2d 613, 619. Rather, the legislature deliberately adopted an "objective test for analyzing failure of communication." *Id.* Consequently, R.C. 3107.07(A) is satisfied *"only if there is a complete absence of communication for the statutorily defined one-year period."* (Emphasis supplied.) *Id.*

As the trial court noted, lower courts have struggled with the "complete absence" standard in *Holcomb*. Indeed, Justice Douglas in his concurring opinion in *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919, expressed the view that trial courts needed further guidance on how to treat such negligible communication as the sending of a Christmas card. One appellate court has held that a wave and a blown kiss do not rise to the level of a communication. *In re Adoption of Jordan* (1991), 72 Ohio App.3d 638, 644, 595 N.E.2d 963.

Although not necessarily in disagreement with *Jordan,* we are convinced that this case involves more than a wave, blown kisses, or a mailed Christmas card. Rather, the record is relatively undisputed that there was a face-to-face encounter between White and Brandon, that the two exchanged conversation, that they hugged and interacted by playing ball, and that White identified himself as Brandon's father. For the trial court to have dismissed this contact as a "chance encounter" lacking "the most significant exchange of ideas" strikes us as just the type of "subjective analysis" that, according to the court in *Holcomb,* the legislature was determined to avoid. We hold, therefore, that the trial court erred when it concluded that the encounter between Brandon and White was insufficient to constitute a communication foreclosing the application of R.C. 3107.07(A).

Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings in accordance with law.

*Judgment reversed*
*and cause remanded.*

PAINTER, J., concurs separately.

SUNDERMANN, J., dissents.

PAINTER, Judge, concurring separately.

We can, and should, only follow the plain meaning of the legislation. If we try to redefine "communication" to mean "meaningful communication," we are adding words to the statute that the legislature did not intend. Then, we would have to define "meaningful." And how much communication is actually meaningful?

Here, the boy was told who his father was. That is no doubt communication, and meaningful indeed.

SUNDERMANN, Judge, dissenting.

I respectfully dissent. The issue is whether there was "communication" within the meaning of the statute. I agree with the finding of the trial court that there was not. Mr. White chose not to communicate with his son during the year in question. The only contact during this period was a chance meeting while the son and another person were coming home from Kroger's. At most, a few words were exchanged. In *Bovett*,[1] Justice Douglas said that the statute should not be negated because a parent made a payment or two during the year or communicated once or twice during the year in question.

In *Jordan*,[2] the court said the evidence showed that the appellant saw her child only once during the year at a Christmas program at the boy's school. Although they did not exchange words, there was contact. The court held that there was sufficient evidence to show that appellant had failed to communicate with her son. In my view, any encounter does not preempt the application of the statute. To call any chance contact "communication" would mean prospective adoptive children would have to be isolated for a year so that they would not run into a parent who abandoned them on the street as happened here.

---

1. *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919.

2. *In re Adoption of Jordan* (1991), 72 Ohio App.3d 638, 595 N.E.2d 963.