WILLIAM F. CHINNOCK, J., retired of the Cuyahoga County Juvenile Court, sitting by assignment.

## In re [ADOPTION OF] WILLIAMS.

Probate Court of Hamilton County,
Ohio.

No. 00–4736.

Decided Feb. 4, 2002.

---

48. On August 16, 2001, the Seventh District Court of Appeals of Ohio (case No. 01–532–CA) dismissed the appeal in this case.

Darrell D. Payne, for petitioner.

Ambrose Moses III, for respondent.

WAYNE F. WILKE, Judge.

{¶1} This matter came before the court on November 29, 2001, pursuant to Civ.R. 53(E)(4)(b), regarding objections to the decision of magistrate dated October 15, 2001. In that decision, the magistrate recommended that the consent of Shawn Williams, the child's biological father, was not necessary for this proposed stepparent adoption petition to proceed. Present were Darrell D. Payne on behalf of the petitioner, Jeffrey Sandidge, and Ambrose Moses III on behalf of the respondent, Shawn Williams. The court established a timetable for written closing arguments to be submitted and afforded the parties the opportunity to file replies to those closing arguments. This matter is now ripe for decision.

### Facts and Procedural Posture

{¶2} The child was born on May 22, 1993 in Cincinnati, Ohio. His mother is Ingrid Sandidge and his biological father is Shawn Williams. Ingrid Sandidge and Jeffrey Sandidge were married on September 19, 1998, and Jeffrey Sandidge filed a petition to adopt the child on September 1, 2000.

{¶3} The magistrate found that Shawn Williams made at least three telephone calls to the child in the year immediately prior to the filing of the adoption petition, although the respondent contends that he made even more calls than that. The magistrate also found that Shawn Williams sent birthday presents, consisting of toys and clothes, in the year immediately proceeding the filing of the adoption and that Shawn Williams paid $125 for karate lessons on the child's behalf during that same one-year period. There is presently no court-mandated duty imposed upon Shawn Williams to pay any support. The question is whether Shawn Williams communicated with or supported his son in the year immediately preceding the filing of the adoption petition. If he did communicate with and support his son, then Shawn Williams's consent to the adoption is required. However, if he failed to communicate or to provide support for the child, then Shawn Williams's consent to the proposed adoption is not required.

*Conclusions of Law*

{¶4} R.C. 3107.06 provides inter alia that a petition to adopt a minor may be granted only if the minor's biological mother and father consent to the adoption, unless a court finds that their consents are not required. A court may conclude that a biological parent's consent is not required if it finds that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately prior to the filing of the adoption petition. Failing to communicate with the minor and failing to provide for the minor are two reasons why a court might find a parent's consent to an adoption is not necessary. One of the problems in this area of law is that of defining what constitutes "failing to communicate" and "failing to support" (R.C. 3107.07[A]), so that a parent's consent is not required.

{¶5} The seminal case in Ohio on what constitutes a lack of communication is *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613. In *Holcomb*, the court concluded that the legislature, in enacting R.C. 3107.07, opted for certainty. Id. at 366, 18 OBR 419, 481 N.E.2d 613. The court determined that a parent's consent is not required if there is a *complete* absence of communication for the one-year period and if there was no justifiable cause for the failure of communication. Id. at 367, 18 OBR 419, 481 N.E.2d 613.

{¶6} Within a short time, members of the Supreme Court began to disagree about its holding in *Holcomb*. In *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919, the court shifted the burden to the parent opposing the adoption to show that any absence of communication or support was justifiable. Id. at paragraph two of the syllabus. The court in *Bovett* reaffirmed that it was obliged to strictly construe the statute's language but that it would not adopt a construction "so strict as to turn the statute into a sham." Id. at 106, 515 N.E.2d 919. Justice Douglas applauded the court's decision as a step in the right direction and wrote that trial courts need further guidance as to whether the making of one payment of support during the year or the sending of a Christmas card is enough to frustrate the operation of the statute. Id. at 107, 515 N.E.2d 919 (Douglas, J., concurring). Justice Douglas wrote that a probate court should not be bound "to negate the effect of the statute simply because a natural parent has made a payment or two during the year or has communicated once or twice during the year." Id. Indeed, R.C. 1.47(C) presumes that the intention behind every statute is a just and reasonable result. Several appellate decisions have subsequently followed Justice Douglas's position and have found de minimis efforts at communication and support insufficient to require that parent's consent. No statewide precedent has been established, however.

{¶7} Recently, the First District Court of Appeals had the opportunity to interpret R.C. 3107.07 with respect to a man who, completely by chance, talked with his son for whom an adoption petition had been filed. The appellate court reversed this court's determination that one encounter was not sufficient "communication" within the meaning of R.C. 3107.07. *In re Adoption of Tscheiner* (2000), 141 Ohio App.3d 527, 752 N.E.2d 292. The court in *Tscheiner* stressed that there is an objective test for analyzing the failure of communication required by R.C. 3107.07(A) and that even one event of communication made that parent's consent to an adoption a requirement. In this case, there were at least three instances where the respondent communicated with his son and there was evidence that the respondent paid for some birthday gifts and for karate lessons. Accordingly, Shawn Williams's consent to this adoption is necessary and the objections to the decision of the magistrate are sustained.

{¶8} Shawn Williams represents one of those parents written of by the Ohio Supreme Court in *In re Adoption of Holcomb*, supra. He is uncaring, unworthy, and unscrupulous. In this situation, three telephone calls and a petty amount of cash legally define and establish the respondent's relationship with his son and are sufficient to thwart an adoption by a well-meaning stepparent. That is sad and pathetic and reflects the development of case law that is inconsistent with social policy and values.

{¶9} The underlying premise of adoption law is that a parent's consent to an adoption is required unless a court finds that it is not required. The next step after the consent phase is for a court to determine whether the adoption is in the child's best interest. Adoption proceedings should not, however, become "beauty contests" where a court is forced to make a subjective choice of who would make a better parent, in other words, to make a quasi-determination of the child's best interest at the beginning of the proceedings. On the other hand, a biological parent in many cases is voluntarily so far removed from a child's life that such a choice would be obvious. A chance encounter or single birthday card have been found to be sufficient communication to give standing to a biological parent to oppose an adoption, effectively preventing a child's best interest from ever being considered. Despite this harsh result for the child, this court is bound by the prior decisions of the Ohio Supreme Court and First District Court of Appeals. See, e.g., *In re Schott* (1968), 16 Ohio App.2d 72, 75, 45 O.O.2d 168, 241 N.E.2d 773.

{¶10} There may very well come a time when a court, reviewing the facts in cases such as this, will be able to conclude that a parent's consent to an adoption is not necessary because the parent made only de minimis efforts at either communication or support. Unfortunately, this court is unable to make that determination today. The case law favors a black-letter rule that currently

protects a nonconsenting parent's right to thwart an adoption at the expense of a child's best interest. In many cases, a nonconsenting parent is shielded by R.C. 3107.07, although his or her actions are in direct contravention of the common-law obligation of a parent to support a child and, of greater significance, the moral obligation to actually play a role in the child's life. The law should reflect that one's status as a parent requires more than being a name on a birth certificate. It should reflect that parenting is a full-time, on-going endeavor and not something to consider or address only when it is convenient. There seems to be growing recognition that the case law interpreting R.C. 3107.07 is not always beneficial to a child and can cause hardship. In many cases, a child who, through adoption, could have two loving and caring parents is shortchanged and left with one loving and caring parent, and one who gives his or her parental obligations as much thought as a "couch potato" would give in changing a television channel. This court is encouraged that eventually a fairer statute can be crafted (or a body of case law developed) that will more equitably determine whether a parent's consent to an adoption is required.

{¶11} This matter is referred to the magistrate for further proceedings if the respondent's consent is obtained within thirty days from the date of this entry or for dismissal if it is not obtained within thirty days from the date of this entry.

So ordered.